# EXHIBIT A

Filing # 230014000 E-Filed 08/22/2025 10:46:33 AM

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**

**IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**CIVIL DIVISION**

RICKY DEAN KELLY,
3772 Merk's Place,
Leland, NC 28451,
Pro Se

**Plaintiff,**

v.

BRYAN F. AYLSTOCK,
AYLSTOCK, WITKIN, KREISS & OVERHOLTZ, PLLC,
17 East Main Street,
Suite 200,
Pensacola, Florida 32502,

**Defendants.**

**Case No.:**
**Division:**

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**JURY DEMAND ENDORSED HEREIN**

**I. INTRODUCTION**

1.  Ricky D. Kelly, a decorated Iraq war veteran, served our nation with honor only to suffer severe hearing damage due to defective earplugs designed to protect him. Trusting

1

in the justice system, he sought legal redress, hiring Aylstock Witkin Kreiss & Overholtz PLLC (AWKO) to champion his cause. Instead of advocacy, Mr. Kelly encountered neglect and deception. AWKO, led by Bryan Aylstock, settled Mr. Kelly's deeply personal claim without his informed consent, crucial discussions, or even basic courtesy of communication, betraying the very essence of fiduciary duty and legal representation.

2.  Repeatedly, Mr. Kelly reached out, seeking clarity and reassurance about his case, only to be met with silence or empty promises. This pattern of disregard culminated in a settlement that disregarded Mr. Kelly's rights and interests, decided unilaterally and under terms that served the firm, not the client. Mr. Kelly's trust was not just ignored but exploited, turning his quest for justice into a struggle against those he believed were on his side.

## II. JURISDICTION

3.  Subject Matter Jurisdiction: This Court has subject matter jurisdiction over the claims presented in this complaint pursuant to the laws of the State of Florida, as the matters in controversy arise under the statutes and common law of Florida. The Florida Circuit Court is vested with the authority to adjudicate cases involving such legal claims and disputes as set forth in the complaint.

4.  Personal Jurisdiction: This Court has personal jurisdiction over the parties in this case because the defendant(s) reside in, conduct business in, or have committed actionable events within Escambia County, Florida. Furthermore, the events or omissions giving rise to the claims occurred within Escambia County, thereby establishing sufficient contacts with this jurisdiction to permit the Court to exercise personal jurisdiction in accordance with the principles of due process under the laws of the State of Florida.

## III. PARTIES

5.  Plaintiff - Ricky Dean Kelly is an individual with his domicile at 3772 Merk's Place, Leland, North Carolina, 28451.

6.  Defendant - Bryan F. Aylstock is an individual with his domicile in Pensacola, Florida. Mr. Aylstock is being sued in his individual capacity.

7.  Defendant - Aylstock, Witkin, Kreiss & Overholtz PLLC is a law firm organized and existing under the laws of the State of Florida with its principal place of business located

at 17 East Main Street, Suite 200, Pensacola, Florida, 32502. The firm is a citizen of Florida for jurisdictional purposes.

## IV. GENERAL ALLEGATIONS

8.  On August 29, 2019, Plaintiff Ricky D. Kelly, a decorated Iraq War veteran, entered into a contractual relationship with the law firm Aylstock, Witkin, Kreis & Overholtz, PLLC (hereafter referred to as "AWKO"), to represent him in a lawsuit regarding defective 3M earplugs which allegedly caused him severe hearing damage and tinnitus.

9.  Plaintiff was contacted by a female employee at AWKO. She insisted that the contract needed to be signed that day and assured Plaintiff that his attorney would subsequently contact him to discuss his case and answer any questions regarding the contingency contract. She also promised plaintiff to forward him a copy once it was fully executed.

10.  Despite these assurances, Plaintiff never received a fully executed copy of the contract. Plaintiff was never contacted by his attorney to discuss the specifics of his case or the details of his contract until months after Defendant agreed to the aggregate settlement.

11.  Throughout the subsequent years leading up to August 29th 2023, Plaintiff made multiple attempts to communicate with AWKO to discuss his case and obtain updates specific to his situation. Each attempt was met with generic responses stating that the updates were general MDL updates and not specific to his case. Plaintiff was always informed that we are unable to provide any information on your individual case.

12.  During this period, Plaintiff made contact with AWKO to verify the firm had everything needed for his case in emails dated May 20th 2022, June 24th 2022 and July 18th 2023. Defendant did not respond to any of the emails.

13.  On June 21, 2022, Plaintiff's case was filed in the North Florida Federal Court under civil action number 7:20-cv-36595.

14.  Despite repeated inquiries and requests for information, Plaintiff received no substantive responses from AWKO or information specific to his case from August 29th 2019 through August 29th 2023, the date the Defendant agreed to the aggregate settlement.

15.  On August 29, 2023, without Plaintiff's informed consent or any prior discussions regarding any specifics of his case or his possible settlement options, Bryan Aylstock of AWKO unilaterally entered into an aggregate settlement that included Plaintiff's claims.

16.  Defendant settled the lawsuit at the time when the MDL Court was making preparations to remand cases to their respective districts for trial. Defendant settled the case for six billion which was not in the best interest of the Plaintiff despite one year earlier on a public radio station, Mr. Aylstock stated that 3M's exposure to this lawsuit was north of one trillion.

17.  Plaintiff discovered the settlement of his case after the fact, and learned that his case had been settled without a proper evaluation of its merits or his specific circumstances, and crucially, without his informed consent. Defendant failed to provide plaintiff with any of the required disclosures required when settling claims of multiple clients.

18.  Subsequent communications from AWKO, including emails from Bryan Aylstock and Julie Orshell, acknowledged that they had not discussed the specifics or complexities of Plaintiff's case with him prior to the settlement.

19.  On September 13th 2023, Plaintiff received an email from an employee named Julie Orshell at AWKO. Her email stated that we cannot speculate on possible values of your case, despite Defendant settling his case on August 29th, 2023.

20.  On September 13th 2023 Julie Orshell from AWKO, in a phone conversation, and under false pretenses, misled plaintiff by assuring him that his attorney would not withdraw from representing him if he chose to proceed with an additional lawsuit concerning the Iran Terror case, which influenced plaintiff's decision to sign the additional contingency contract.

21.  On January 8, 2024, Bryan Aylstock admitted in an email to Plaintiff that they had not yet reviewed all pertinent medical records or discussed the complexities of Plaintiff's case, despite having already settled the case months prior.

23.  Plaintiff continued to request a copy of his contingency contract 13 times between September 1, 2023, and October 24, 2023, which AWKO failed to provide until it was too late for Plaintiff to seek alternative legal representation due to the submission of the identification report to the court.

24.  Defendant further restricted Plaintiff's option to obtain alternative council due to the restrictions of lawyers right to practice clause that defendant negotiated into the aggregate settlement agreement violating rule 4-5.6(b) of the Florida rules of professional conduct

25.  During this time Plaintiff became aware that defendant failed to provide a three day right to withdraw from the contingency contract and failing to provide plaintiff with a statement of clients rights as required by the Florida rules of professional conduct 4-1.5.

26.  Defendant, Bryan Aylstock, serving dual roles as plaintiff's attorney and serving as the primary attorney for the MDL Plaintiff Steering Committee, Mr. Aylstock negotiated terms in the aggregate settlement that placed his interests and those of the MDL settlement above those of his client, Mr. Kelly.

27.  The aggregate settlement negotiated by Mr. Aylstock included terms that were not in the best interest of Plaintiff, such as restrictions on lawyer's right to practice, violating Florida Rule 4-5.6(b)

28.  Defendant agreed to a clause in the settlement that says he must recommend this settlement to 100% of his clients in further proof Defendant's self-dealing to obtain a global settlement, while declining to understand and address Plaintiff's case.

29. Defendant negotiated other coercive clauses that pressured clients into settling by threatening withdrawal of Defendant's legal representation, placing burdens on Plaintiff's decision to settle a matter.

30.  Defendant negotiated additional terms to place his interests above those of his client such as allowing himself to cease any further development of clients cases as of the settlement date and withdraw from his clients cases requiring all clients to comply with CMO 57 which requires extensive work and involves most of the pre trial work that the Defendants are paid to complete and still receive their full contingency fee of 40%.

31.  Defendant, Mr. Aylstock, made several false and misleading statements from January 2024 through March 2024. Including that settling was in the Plaintiffs best interest, despite Defendant remaining uniformed of Plaintiff's case.

32.  Plaintiff received an offer of settlement on November 17, 2023 from AWKO for $10,000. The email recommended that Plaintiff accept the settlement. Mr. Aylstock and others at the firm made repeated requests for Mr. Kelly to join settlement stating it was in his best interest. Defendant made these recommendations without evaluating Mr. Kelly's claims.

5

33. On February 19th, 2024 at 5:45 pm, Plaintiff was abruptly requested by AWKO to provide extensive documentation for a lost wages claim by the end of the day, an unreasonable demand given the timeframe and the age of the required documents, resulting in Plaintiff having to forego his lost wages claim. This was the first request from AWKO for lost wages documents.

33. On March 14th 2024 Defendant Bryan Aylstock revealed confidential information regarding Plaintiff's son's death and the link between Plaintiff's case to a 3M Earplug attorney named Charles Beall, without Plaintiff's consent. Disclosing information detrimental to Plaintiffs case.

34. Defendant failed to have a discussion with Mr. Kelly, as promised, on March 14th 2024 after the hearing in Pensacola to finally discuss his case in detail and his son's potential case against 3M and the relation to Mr. Kelly's case and the death of his son.

35. Defendant failed to discuss this situation in detail with the Plaintiff after repeated requests. Mr. Aylstock was hyper active in pressuring Plaintiff to join settlement and less motivated to understand Plaintiffs case details.

36. Plaintiff's son passed away in 2016, he was a member of the military and suffered hearing damage, and Plaintiff as his father, attempted to inquire about a potential case against 3M for his son's hearing problems he developed while wearing the earplugs and suffered until his passing in 2016.

37. Defendant made a false statement in his answer to Plaintiffs bar complaint, stating Mr. Kelly's son never wore the earplugs and that his son died of an overdose, which shows a inconsiderate lack of regard for Plaintiff's case.

38. In addition, Defendant would never provide the chance for the Plaintiff to explain the connection between his Plaintiffs case and his son's death, a connection the Plaintiff believes attributed to the death of his son.

39. Mr. Aylstock threat to withdraw from Kelly's representation had a coercion aspect that impinges on the clients right to accept or reject a settlement. Rule 4-1.2(a) of the Florida rules states Lawyer must abide by clients decision concerning the objectives of representation and abide by the clients decision to settle a matter.

40. While pressuring Plaintiff to settle, Plaintiff requested Defendant to explain what "confidential exhibit number 10" meant in the settlement agreement by phone, by Email and in person on many occasions. Mr. Aylstock refused to provide an answer.

41. On March 22nd 2024, the date of the Federal Judges order requiring defendant to continue his representation of Mr. Kelly until the completion of the CMO 57 process, instead, Mr. Aylstock withdrew on that day from representing Plaintiff, directly contravening the court's order and severely impacting Plaintiffs legal rights and interests.

42. Defendant withdrew against a Federal Judge court order and at a time Plaintiff had court ordered requirements due within days of his withdrawal, causing material adverse effects on Plaintiff's case, also violating Florida rule 4-1.16.

43. On October 16th 2024, Plaintiff received a letter from AWKO stating that this letter is to inform you that your case has been dismissed. Plaintiff received this letter seven months after the defendant withdrew, further displaying AWKO's botched handling of Plaintiff's case.

44. Plaintiff filed a complaint with the Florida Bar detailing these issues, emphasizing the lack of communication, failure to obtain informed consent, and other breaches of fiduciary duty by AWKO and specifically, Bryan Aylstock.

45. Documentation supporting Plaintiff's claims includes emails, phone call records, and a detailed complaint filed with the Florida Bar, which outlines the alleged professional misconduct and violations of the rules of professional conduct by AWKO and Bryan Aylstock.

46. This sequence of events and lack of proper legal representation and consultation has led Plaintiff to suffer significant losses, not only in potential compensation for his injuries but also in legal rights and proper representation.

## V. CAUSES OF ACTION

### COUNT ONE - BREACH OF FIDUCIARY DUTY

47. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

48.  In Florida, a claim for breach of fiduciary duty requires the plaintiff to establish the existence of a fiduciary relationship between the plaintiff and defendant, the defendant's breach of duties arising under that fiduciary relationship, and damages proximately caused by the breach.

49.  A fiduciary relationship existed between Plaintiff, Ricky D. Kelly, and Defendant, Aylstock, Witkin, Kreiss & Overholtz PLLC, and specifically with Defendant Bryan Aylstock, as evidenced by the legal representation agreement entered into on August 29, 2019, wherein Defendants agreed to represent Plaintiff in litigation concerning defective 3M earplugs that resulted in Plaintiff's severe hearing damage and tinnitus.

50.  Defendants breached their fiduciary duties by entering into an aggregate settlement without Plaintiff's informed consent or knowledge, as required under Florida Rule of Professional Conduct 4-1.8(g). Defendants negotiated and agreed to this settlement dated August 29th 2023, without obtaining or evaluating Plaintiffs complete medical records or discussing the complexities of his case with him, as admitted by Defendant Bryan Aylstock in an email dated January 8th 2024.

51.  Defendants breached their fiduciary duties by failing to obtain Plaintiff's informed consent in a writing signed by him after full disclosure of the existence and nature of all claims involved including informing each Plaintiff of the material terms of the settlement, obtaining all Plaintiff's informed consent, participation of each person in the settlement and the amount each Plaintiff will receive before the settlement offer is made or accepted.

52.  Defendant further breached their fiduciary duties by placing their best interest in the MDL and a global settlement ahead of the Plaintiff best interests causing an attorney/ client conflict of interest.

53.  Defendants' breaches of their fiduciary duties were the direct and proximate cause of damages to Plaintiff. Defendants settled Plaintiff's claims without a proper evaluation of the case, thereby undervaluing Plaintiff's claims and coercing him into a settlement that was not in his best interest.

54.  This settlement was detrimental to Plaintiff and was negotiated under conditions that placed undue pressure on Plaintiff to settle, as evidenced by the terms of the aggregate settlement, the amount of the settlement was significantly lower than the actual value of Plaintiff's claims.

55.  As a result of Defendants' breaches of fiduciary duty, Plaintiff suffered damages including but not limited to loss of potential compensation that could have been

8

recovered had his case been properly evaluated and pursued individually as Plaintiff requested throughout the litigation, before a settlement offer was accepted, eliminating any chance for Plaintiff to negotiate an equitable pre-trial settlement. Defendants caused emotional distress, and other consequential damages due to the mishandling of his legal representation.

56.  Plaintiff seeks relief for Defendants' breach of fiduciary duty, including disgorgement of fees collected by Defendants, a full accounting of the aggregate settlement, and damages as proven at trial.

**COUNT TWO - FRAUD**

57.  Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

58.  In Florida, a claim for fraud requires the plaintiff to establish: (a) a false statement concerning a material fact; (b) the representor's knowledge that the representation is false; (c) an intention that the representation should induce another to act on it; and (d) consequent injury by the party acting in reliance on the representation.

59.  Defendant Bryan Aylstock, through his law firm AWKO, made false statements to Plaintiff concerning the handling and settlement of Plaintiff's claims related to the defective 3M earplugs, which are material facts.

60. Defendant knew these representations were false when made. This is evidenced by Defendant's email dated January 8, 2024, where Mr. Aylstock admitted to Plaintiff that they had not connected to go through all of Plaintiff's audiograms and the complexities of his case, despite previously entering into a settlement agreement.

61. Defendant intended for Plaintiff to rely on these false representations as evidenced by the firm's repeated assurances to Plaintiff that his case was being handled appropriately, and that his attorney would contact him to discuss his case, which never occurred.

62.  Plaintiff relied on these false statements by remaining with AWKO under the belief that his case was being actively and appropriately managed and that he would be consulted before any settlement was reached.

63.  As a direct and proximate result of the reliance on Defendant's false statements, Plaintiff suffered damages including but not limited to entering into an aggregate settlement that was not in his best interest, the loss of opportunity to pursue individual

9

legal claims more favorable to him, and emotional distress from the mishandling of his case.

64. Defendant also made false statement of a material fact in his response to Plaintiff's bar complaint, claiming the case was settled based on the individual assessments of each client's case, which was contrary to the information in Defendant's own emails admitting lack of knowledge about Plaintiff's specific case details.

65. Defendant knew the statement was false when made as evidenced in the emails from Aylstock on January 8th 2024 and Orshell on September 13th 2023.

66. Defendant intended the Florida Bar to act upon his statement in an attempt to avoid accountability.

67. These actions by Defendant constitute fraud under Florida law, and Plaintiff has suffered damages as a direct and proximate result.

68. Defendants made deceptive statements that Plaintiff must sign the settlement by the final registration day or Plaintiff would not be allowed to join settlement afterwards. This was a false statement of material fact.

69. Defendants knew the statement was false and intended plaintiff act upon it.

70. Defendant misled Plaintiff by offering to drop all of his fees if Plaintiff agreed to settle in an apparent attempt to benefit with a kind gesture, all the while, failing to inform Plaintiff that he negotiated that clause in the settlement that does not allow Defendant to receive funds from Plaintiff who refuse to join settlement by the final registration day.

71. Defendant knew this was false when the statement was made. Defendant intended on Plaintiff to act upon it. The statement is a false statement of a material fact.

72. These actions by Defendant constitute fraud under Florida law, and Plaintiff has suffered damages as a direct and proximate result.

73. Plaintiff was coerced into signing additional legal agreements under false pretenses, including a contingency contract for an unrelated legal matter, based on assurances from Defendant's firm that his attorney would not withdraw from his 3M case.

74. This was a false statement of a material fact. Defendant knew the statement was false and intended Plaintiff to act upon it.

75.  Plaintiff acted upon the fraudulent statement and signed the contingency contract. Shortly after the defendant withdrew from the Plaintiff's 3m case, he withdrew from the Iran terror suit.

76.  The Defendants fraudulent statement lead Plaintiff to sign an agreement allowing AWKO to represent Plaintiff in the Iran Terror Lawsuit. Plaintiff was damaged to the extent he could not find replacement council for his particular injuries because the firms he contacted had stopped adding new clients and was unable to pursue his claims for his injuries relating to an IED blast in Iraq.

77.  AWKO's deceptive actions halted Plaintiff's efforts to hold Iran accountable for permanent injuries for which he was awarded the Purple Heart. Previous cases proved to be very favorable to prior veterans.

78.  Defendant's actions and those of his law firm AWKO deprived Plaintiff of his right to make informed decisions regarding his legal representation and settlement options, directly resulting from their fraudulent conduct.

**COUNT THREE - LEGAL MALPRACTICE/NEGLIGENCE**

79.  Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

80.  The duty of care required of a legal professional in Florida mandates that an attorney must act with the level of care, skill, and diligence, which is recognized as acceptable and appropriate by reasonably prudent similar attorneys under similar circumstances.

81.  Defendant, Aylstock Witkin Kreiss & Overholt PLLC, and specifically Attorney Bryan Aylstock, owed a duty of care to Plaintiff, Ricky D. Kelly, to competently represent and advise him regarding his claims related to defective 3M earplugs, which caused him severe hearing damage and tinnitus.

82.  Defendant failed to obtain Plaintiffs informed consent regarding his representation involving multiple clients. Conflicts of interest are present involving payments to Plaintiff's with no medical documentation or proof of injury and fraud currently being investigated on payments of settlement funds to foreign citizens.

83.  Defendant breached his duties when he failed to provide Plaintiff with a copy of his contingency contract at a critical time specifically between September 1st 2023 through

11

October 21st 2023, eradicating any chance to obtain another professional opinion and the possibility of replacing his representation.

84. Defendant also brushed aside multiple requests for answers to questions about the settlement agreement, including withholding information on confidential exhibit 10, while pressuring Plaintiff to sign settlement.

85. Defendant breached his duty by failing to communicate with Plaintiff about significant aspects of his case, including but not limited to the evaluation of Plaintiff's individual claim, and the strategy for pursuing Plaintiff's legal rights.

86. Defendant also failed to provide Plaintiff with a copy of the executed representation agreement and did not discuss the terms or implications of the common representation with Plaintiff, which are critical for informed consent under Florida law.

87. Defendant's abrupt withdrawal, in defiance of a court order, directly forced Plaintiff into the settlement of his claims under terms that were not authorized or agreed upon by Plaintiff, thereby denying Plaintiff the opportunity to fully pursue his legal claims against 3M for the damages he suffered due to the defective earplugs.

88. Defendants misguided and unauthorized statements about Plaintiff's case to the 3M attorney and the fact that Mr. Aylstock would never discuss his son's potential claim for hearing problems he suffered while he was alive or discuss with Plaintiff the impacts of his Tinnitus that had a direct connection to and was a considerable factor that related to the death of Plaintiff's son, Patrick C. Kelly in April 2016.

89. Defendants negligence was a direct cause Plaintiff could not pursue the claims of his son or the claims related to the loss of his son.

90. Defendant refused to answer questions about the settlement agreement after Plaintiff made multiple attempts to understand the settlement contract to make an informed decision.

91. Defendant's failure to perform a full evaluation of Plaintiff's case, to communicate the status and strategy of the case, constitutes negligence.

92. Defendant's misrepresentations to Plaintiff regarding the handling of his case and the settlement process, as well as the failure to follow through on promises made regarding communication and case evaluation, further evidence Defendant's negligence and breach of duty.

12

93.  Defendant's actions and inactions have caused Plaintiff significant harm, necessitating this action for legal malpractice and negligence to recover the damages suffered due to Defendant's professional obvious negligence.

## VI. DEMAND

WHEREFORE, Plaintiff Ricky D. Kelly respectfully prays this Court:

A. Grant judgment in favor of Plaintiff on all claims and for the remedies sought in each claim;

B. Issue a judicial determination of the rights, duties, and obligations of the parties hereto;

C. Enjoin Defendant Aylstock Witkin Kreiss & Overholt PLLC from engaging in any further aggregate settlements without the informed consent of all represented clients, as required under Florida Rule of Professional Conduct 4-1.8(g);

D. Order a full accounting and disgorgement of all fees improperly obtained by Defendant through the aggregate settlement process, ensuring transparency and adherence to ethical standards;

E. Award Plaintiff actual damages in an amount of 1.1 million, reflecting the true value of his claims had they been individually evaluated and pursued.

F. Grant Plaintiff the maximum economic, non-economic, actual, statutory, emotional, general, special, punitive, and other damages available under the law, including but not limited to those provided under Florida Statutes and the applicable Rules of Professional Conduct;

G. Award Plaintiff attorney fees, with the appropriate multiplier, plus costs and expenses of litigation, ensuring full compensation for the legal services required to rectify the harm caused by Defendant's actions;

H. Award Plaintiff such other relief that the Court deems just and appropriate under the circumstances to fully address the extent of the harm suffered and to prevent future occurrences of similar misconduct.

**JURY DEMAND:**

13

PLAINTIFF HEREBY DEMANDS A JURY ON ALL TRIABLE MATTERS.

Respectfully Submitted,


Ricky D. Kelly
3772 Merk's place
Leland NC 28451

Pro-Se